IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
March 19, 2021
ST-2020-SM-00092
TAMARA CHARLES
CLERK OF THE COURT

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DISTRICT OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| NATALIA HILL, JULIO KING, II and<br>CAMERON KING BY MOTHER<br>NATALIA HILL<br><br>                         Plaintiffs,<br><br>    vs.<br><br>FURNITURE INN at<br>FURNITURE, INC.,<br>                  Defendant. | CASE NO. ST-2020-SM-00092<br><br>SMALL CLAIMS COMPLAINT<br><br>ACTION FOR DEBT/DAMAGES |

### Cite as: 2021 VI Super 35U

### MEMORANDUM DECISION

**CARR, H.,** *Magistrate Judge*

¶1 **THE MATTER** before Magistrate Judge Henry V. Carr, III of the V.I. Superior Court is on a small claims case heard by the Court on March 16, 2021. Plaintiffs Natalia Hill and Julio King, II appeared *pro se* and both testified and offered documents and photographs to be admitted into evidence. Defendant Furniture Inn appeared *pro se* through Mohammad Hussein, whose father owns the furniture store located at Lockhart Gardens Shopping Mall, St. Thomas, U.S. Virgin Islands. Mr. Hussein testified that he manages and works at Furniture Inn and further testified, cross-examined both Plaintiffs, and argued why Furniture Inn is not liable to them on the proffered claims.

¶2 On June 17, 2020, Plaintiffs filed their small claims Complaint against Defendant with several exhibits attached, all of which were admitted into evidence, claiming that Furniture Inn sold them some furniture that was infested with mold. They claimed damages, plus court costs, in the amount of $5,892.15[1] consisting of the following described items:

| | |
|---|---|
| Bedroom Set | $ 2,000.00 |
| Dining Set | $ 2,000.00 |
| Furniture Removal Costs | $ 350.00 |
| Mold Testing/Analysis Report | $ 342.15 |
| October 2019 Rent | $ 1,200.00 |
| **Total** | **$ 5,892.15** |

¶3 The working hypothesis Plaintiffs asserted in support of their conclusion was that none of their other furniture in their one-bedroom apartment was found to have mold, except the furniture

---

[1] The total claimed in Plaintiffs' Complaint was $6,192.15, but the Court found the total of all individual items claimed to equal $5,892.15, not $6,192.15.

they purchased from Defendant. Since none of their other furniture had mold or became contaminated with mold, Plaintiffs concluded that the furniture they purchased from Defendant contained mold at the time they purchased it. Therefore, Defendant breached its contractual obligation to sell them furniture free from defects, including mold, which impacts Plaintiffs' health as well as the health of their newborn baby. The Court does not believe that Defendant would dispute this basic proposition that the seller of brand new furniture, at a premium price, impliedly warrants that such furniture is free from mold. Nor does the Court believe that anyone would dispute that mold can negatively affect one's health.

## I.        Basic Facts About Mold

¶4        Attached to Plaintiffs' Expert Report on mold found in their furniture (dining set only) by Environmental Concepts, Inc., Plaintiffs' Exhibit 6, are several cited "Consumer Links" providing information about mold. Two of the websites whose literature is quoted below are the Centers for Disease Control and Prevention and the Federal Emergency Management Agency.

### How common is mold in buildings?

Molds are very common in buildings and homes. Mold will grow in places with a lot of moisture, such as around leaks in roofs, windows, or pipes, or where there has been flooding. Mold grows well on paper products, cardboard, ceiling tiles, and wood products. Mold can also grow in dust, paints, wallpaper, insulation, drywall, carpet, fabric, and upholstery.

The most common indoor molds are *Cladosporium*, *Penicillium*, and *Aspergillus*. We do not have precise information about how often different molds are found in buildings and homes.

### How do molds get in the indoor environment and how do they grow?

Mold is found both indoors and outdoors. Mold can enter your home through open doorways, windows, vents, and heating and air conditioning systems. Mold in the air outside can also attach itself to clothing, shoes, and pets and can be carried indoors. When mold spores drop on places where there is excessive moisture, such as where leakage may have occurred in roofs, pipes, walls, plant pots, or where there has been flooding, they will grow. Many building materials provide suitable nutrients that encourage mold to grow. Wet cellulose materials, including paper and paper products, cardboard, ceiling tiles, wood, and wood products, are particularly conducive for the growth of some molds. Other materials such as dust, paints, wallpaper, insulation materials, drywall, carpet, fabric, and upholstery, commonly support mold growth.

### How do you know if you have a mold problem?

### Large mold infestations can usually be seen or smelled.

### How do molds affect people?

Exposure to damp and moldy environments may cause a variety of health effects, or none at all. Some people are sensitive to molds. For these people, exposure to molds can lead to symptoms such as stuffy nose, wheezing, and red or itchy eyes, or skin. Some people, such as those with allergies to molds or with asthma, may have more intense reactions. Severe reactions may occur among workers exposed to large amounts of molds in occupational settings, such as farmers working around moldy hay. Severe reactions may include fever and shortness of breath.

In 2004 the Institute of Medicine (IOM) found there was sufficient evidence to link indoor exposure to mold with upper respiratory tract symptoms, cough, and wheeze in otherwise healthy people; with asthma symptoms in people with asthma; and with hypersensitivity pneumonitis in individuals susceptible to that immune-mediated condition.

In 2009, the World Health Organization issued additional guidance, the WHO Guidelines for Indoor Air Quality: Dampness and Mold. Other recent studies have suggested a potential link of early mold exposure to development of asthma in some children, particularly among children who may be genetically susceptible to asthma development, and that selected interventions that improve housing conditions can reduce morbidity from asthma and respiratory allergies.

A link between other adverse health effects, such as acute idiopathic pulmonary hemorrhage among infants, memory loss, or lethargy, and molds, including the mold *Stachybotrys chartarum* has not been proven. Further studies are needed to find out what causes acute idiopathic hemorrhage and other adverse health effects.

There is no blood test for mold. Some physicians can do allergy testing for possible allergies to mold, but no clinically proven tests can pinpoint when or where a particular mold exposure took place.

Centers for Disease Control and Prevention, General Information, "Basic Facts about Mold and Dampness", http.//www.cdc.gov/mold/faqs.htm. [Emphasis added].

¶5    The U.S. Federal Emergency Management Agency has a booklet online entitled "Dealing with Mold & Mildew in your Flood Damaged Home", pertinent parts of which are cited below on how fast mold can grow or develop:

Mildew and molds are fungi - simple microscopic organisms that thrive anywhere there is a moist environment. Molds are a necessary part of the environment; without them, leaves would not decay and aspects of soil enrichment could not take place. It is their ability to destroy organic materials, however, that makes mold a problem for people - in our homes and in our bodies. Mildew (mold in early stage) and molds grow on wood products, ceiling tiles, cardboard, wallpaper, carpets, drywall, fabric, plants, foods, insulation, decaying leaves and other organic

materials. **Mold growths, or colonies, can start to grow on a damp surface within 24 to 48 hours**. They reproduce by spores - tiny, lightweight "seeds"- that travel through the air. Molds digest organic material, eventually destroying the material they grow on, and then spread to destroy adjacent organic material. In addition to the damage molds can cause in your home, they can also cause mild to severe health problems.

...

If your home has water damage due to –

- flooding,
- sewage back-up from flooding in the area,
- plumbing or roof leaks,
- damp basement or crawl space,
- overflows from sinks or bathtub, or
- high humidity: steam cooking, dryer vents, humidifiers,

**mildew and mold will develop within 24-48 hours of water exposure**. Even worse, it will continue to grow until steps are taken to eliminate the source of moisture, and effectively deal with the mold problem.

http//www.fema.gov/pdf/rebuild/recover/fema_mold_brochure_english.pdf. [Emphasis added].

### II.     This furniture transaction is governed by Article 2 of the Uniform Commercial Code.

¶6     The transaction before the Court is covered by Article 2 of the Uniform Commercial Code under Title 11A of the Virgin Islands Code. Furniture falls within the definition of "goods" covered by U.C.C. § 2-105(1). As developed further in the Court's findings of fact, this is not a case of a proper rejection of the furniture. U.C.C. § 2-602(1) provides "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." "After rejection, any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller". U.C.C. § 2-602(2). Rather, this appears to be a case of revocation of acceptance instead of rejection of goods at the time of delivery. "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it". U.C.C. § 2-608(2).

¶7     At the conclusion of the hearing, the Court took the case under advisement. After careful review of the testimony and the documents and photographs admitted into evidence, the Court must dismiss Plaintiffs' small claims complaint with prejudice.

## III.  Findings of Fact

¶8     Plaintiff Natalia Hill is currently employed by the Virgin Islands Water and Power Authority in the Finance Division as a Disaster Recovery Grant Analyst.  Plaintiff Julio King, II owns a local company involved in providing quality control construction services.  Both Plaintiffs reside together at the same apartment with their newborn child.

¶9     Defendant Furniture Inn has operated a furniture store at Lockhart Gardens Shopping Center, St. Thomas, U.S. Virgin Islands, since before Hurricane Marilyn in 1995, which destroyed the shopping center.  The furniture store was reestablished in Lockhart Gardens in 1998.  Mr. Hussein's father has been operating a business in the Virgin Islands since the 1980's.  To Defendant's credit, Furniture Inn is a well-established business which could not have operated for over 22 years in St. Thomas without satisfying the needs of its customers who are looking to purchase defect-free merchandise.  A bad reputation circulates quickly in such a small community as St. Thomas.

### Bedroom Set

¶10    On November 28, 2018, Plaintiffs purchased a bedroom set from Defendant for $2,000. Although Plaintiffs paid $2,300, Defendant subsequently extended to them a credit of $300.  Pls' Ex. 1.  The bedroom set consisted of two side tables, head and foot pieces, and a box spring. . The furniture was for their one-bedroom apartment at 2B Anna's Retreat, St. Thomas, U.S. Virgin Islands, owned by Mr. King's parents.

¶11    The bedroom set was delivered within a few days of its purchase and examined by both Plaintiffs throughout the process of being assembled.  Neither Plaintiff found any mold.  Or, at least, neither Plaintiff, at that time, complained to Defendant about any mold.

¶12    Plaintiffs first discovered mold on the bedroom set around August 2019.  They removed the furniture from the apartment, cleaned it, and returned it to the apartment.  On September 27, 2019, Plaintiffs again discovered black mold on the bedroom set and had their attorney write a letter to Defendant dated September 30, 2019 seeking reimbursement of the purchase price for same.  Pls' Ex. 4.  Plaintiffs' Complaint alleges that they also visited the furniture store regarding the problem on or about September 27, 2019.

¶13    Plaintiffs claim that the mold extensively covered the bedroom set.  The fact sheet attached to the small claims Complaint states:  "the mold was extensive and covered almost the entire back of the headboard, underneath the bed, inside the drawers., and on the trellises which support the mattress (see attached photos marked as [Pls' Ex. 2])."  Their newborn baby's crib is shown in the photograph to be located next to the disputed main bed.

¶14    September 2019 was the first time Plaintiffs notified Defendant about the mold on the bedroom set, some ten months after they had purchased the bedroom set from Defendant.

¶15    Mr. Mohammad Hussein visited the apartment on September 27, 2019 for the purpose of inspecting the bedroom set. The parties were unable to reach a resolution of the mold issue as apparently Mr. Hussein refused to reimburse them for the purchase price of the bedroom set or to remove same from the apartment. Mr. Hussein is seen in the photographs in Plaintiffs' Collective Exhibit 2. He was being photographed covertly by Plaintiffs.

¶16    Plaintiffs removed the bedroom set from their apartment on October 9, 2019.

¶17    Plaintiffs moved out of the apartment on September 27, 2019 but returned on November 25, 2019 and currently remain in the residence.

¶18    Mr. King admitted that mold or mildew can be smelled. He further testified that the mold expert whom Plaintiffs hired to inspect their apartment on October 20, 2019 said that mold can grow and manifest itself, depending on the environmental conditions, within weeks or months. The research material cited above from the U.S. Federal Emergency Management Agency states that mold can grow and manifest itself within a matter of days.

**The Dining Room Set**

¶19    Three months after the purchase of the bedroom set, on February 25, 2019, Plaintiffs returned to Defendant's store and purchased a dining room set consisting of a table and six chairs.

¶20    Defendant delivered the dining room set within a few days of its purchase. Mr. King was present when the delivery was made; when the dining room set was taken out of its packaging and assembled, he noticed no mold. Nor did he complain to Defendant about there being any mold on the dining room set.

¶21    While Plaintiffs allege in their small claims Complaint that they discovered mold on the dining room set on November 22, 2019, Plaintiff Natalia Hill testified in court that they discovered the mold on October 22, 2019. Accepting the earlier, October date, this would mean that Plaintiffs discovered the mold almost eight months from their date of purchase of the dining room set. Given rapidity with which mold tends to manifest, Plaintiffs should have detected the mold in the dining room set, had it been present at the time of purchase on February 25, 2019, by the time Mr. Hussein inspected the bedroom set on September 27, 2019. This inconsistency raises serious questions regarding Plaintiffs' working hypothesis and their steadfast reliance thereon to present their claims before this Court.

¶22    Plaintiffs formally notified Defendant about the mold on the dining room set by letter dated November 13, 2019. Pls' Ex. 5. They asked Defendant to reimburse the purchase price for the dining set and to remove it. Defendant did neither. Plaintiffs had the dining room set removed from the apartment and taken to the dump on or about November 22, 2019. Pls' Ex. 7.

¶23    Plaintiffs heavily rely on the inspection report by Environmental Concepts, Inc. ("Encon") to support their position that *the swab sample taken from underneath the [dining] table showed HIGH contamination with Aspergillus*", which is a mold. Pls' Ex. 7. They further

Memorandum Decision
Natalia Hill, Julio King, II and Minor Cameron King vs. Furniture Inn
St-2020-SM-00092
Page 7 of 8

2021 VI Super 35U

rely of the report's recommendation of the removal of the contaminated furniture. Such reliance is misplaced to support their hypothesis that Defendant sold them mold-infested furniture.

¶24    Encon's report is marred with inconsistencies that refute Plaintiffs' working hypothesis. The report states "we did detect indoor air quality problems." However, the same report correctly states that the source of the poor air quality problems may not stem from the mold found underneath the dining room sets:

> The presence of many biological agents in the indoor environment is due to dampness and inadequate ventilation. Excess moisture on almost all indoor materials leads to growth of microbes, such as mold, fungi and bacteria, which subsequently emit spores, cells, fragments and volatile organic compounds into indoor air. Moreover, dampness initiates chemical or biological degradation of materials, which also pollutes indoor air.

¶25    Plaintiffs moved out the apartment on September 27, 2019 and hired Encon to inspect the apartment and to take samples, which was done on October 20, 2019, some 23 days later. During these 23 days, no one resided in Plaintiffs' apartment, which was closed. The photographs admitted into evidence as Plaintiffs' Collective Exhibit 3 show the inspection and swabs taken from the dining room set.

¶26    Despite Plaintiffs' contention that the furniture was sold by Defendant to Plaintiffs already infested with mold, which did not manifest for some time after Plaintiffs' purchase of the furniture, the mold may have just as well have grown on the furniture, as well as caused the poor air quality in the apartment, by virtue of the dampness and moisture already trapped inside Plaintiffs' closed apartment. Query: Has anyone experienced the damp, mildewy and moldy scent of one's living quarters when the occupant has returned from a vacation, during which time the living quarters were vacant and closed?

¶27    While Encon's report states that "we did not detect any moisture problems within the apartment", it was a "visual inspection" only, which renders that statement incomplete and totally valueless from an evidentiary standpoint. Moreover, Encon's report is absolutely valueless in determining the source of the mold's growth or infestation. It reaches a poor conclusion without informing anyone how it reached that conclusion. In fact, the Court places more credence on the inspection of Plaintiffs' bedroom by Mr. Hussein on September 27, 2019 and the evidence he found that showed moisture in their apartment and the possible sources of that moisture.

¶28    Mr. Hussein felt moisture on the wall behind the headboard of the Plaintiffs' bed. He found a DampRid Moisture Absorber under the Plaintiffs' bed that had overflowed with moisture that caused a small puddle of water on the floor. In other words, he explained or pointed out certain areas in the apartment where moisture can collect and create an environment for mold to grow and prosper.

¶29    In this tropical climate with frequent rainfall, the Court takes judicial notice that V.I. residents frequently experience mold and mildew issues in their homes.

Memorandum Decision
Natalia Hill, Julio King, II and Minor Cameron King vs. Furniture Inn
St-2020-SM-00092
Page **8** of **8**

2021 VI Super 35U

### IV.     Conclusions of Law

¶30     The Magistrate Division has jurisdiction over this small claims case pursuant to sections 112(a) and 123(a)(7) of Title 4 of the Virgin Islands Code.

¶31     Defendant, a furniture store, was under an obligation to sell to Plaintiffs defect free bedroom and dining sets, including being mold free. The sale of furniture is governed by Article 2 of the Uniform Commercial Code in Title 11A of the Virgin Islands Code.

¶32     Plaintiffs inspected the furniture at the time of its delivery to their apartment by Defendant and did not find any mold.   They accepted the furniture, for which they paid monetary consideration, and used that furniture for the purposes for which it was intended for a significant period of time.

¶33     Plaintiffs have failed to support their working hypothesis that, since their other furniture in the apartment had no mold issues, then Defendant sold them furniture infested with the mold that became prevalent many months later.   Plaintiff failed to adequately disprove the likelihood that the mold could have come from moisture in their apartment and therefore was not in the furniture at the time of its purchase from Defendant.

¶34     Defendant did not breach its obligation to sell furniture to Plaintiffs free from defects, including mold.  Even if the furniture did contain mold, Plaintiffs failed to revoke their acceptance within a reasonable time after their discovery of the mold as required by subsection (2) of § 2-608 of U.C.C. under Title 11A of the Virgin Islands Code.

¶35     Plaintiffs failed to prove by the preponderance of the evidence that Defendant sold them mold-infested furniture.

¶36     Plaintiffs' small claims case is dismissed with prejudice.

¶37     The Court will enter a Judgment dismissing the Plaintiffs' small claims Complaint with prejudice. Copies of this Memorandum Decision and the Judgment will be delivered to the parties herein by email at the following email addresses: nataliahill@msn.com; jking2@jubking.com; info@furnitureinnvi.com.

DATED: March____19____, 2021

ATTEST:
**TAMARA CHARLES**
Clerk of the Court
BY:_____
     **COLLEEN SALEM**
     Senior Deputy Clerk 3/19/2021

**HENRY V. CARR, III**
Magistrate Judge of the Superior Court
of the Virgin Islands